**Willie Lee SCOTT, on behalf of himself and all other persons similarly situated, and Gussie Heath**

v.

**T. M. PARHAM, Individually and in his capacity as acting Commissioner of the Georgia Department of Human Resources, et al.**

**Civ. A. No. C75–614A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 2, 1975.

---

Wayne M. Pressel, Atlanta, Ga., Robert W. Cullen, Augusta, Ga., for plaintiff.

Arthur K. Bolton, Atty. Gen., Timothy J. Sweeney and Dorothy Y. Kirkley, Asst. Attys. Gen., Atlanta, Ga., for Parham and Nolan.

Julian M. Longley, Asst. U. S. Atty., Carl H. Harper, Regional Atty. and Alvin Jaffe, Asst. Regional Atty., HEW, Atlanta, Ga., for Mathews.

## ORDER

EDENFIELD, Chief Judge.

Two individual plaintiffs have brought this action, filed April 1, 1975, purportedly on behalf of a similarly-situated class of persons, to challenge state and federal officials' administration of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* and the regulations promulgated pursuant thereto. They allege that the defendants have failed or refused to provide "maintenance support payments" to those individuals "in need" thereof, who are receiving diagnostic and/or rehabilitative services, in alleged violation of the federal statute and regulations. Plaintiffs seek declaratory and injunctive relief to the end that defendants will be required to provide such maintenance payments to the purported plaintiff class. The case is presently before the court for rulings upon several motions: (1) plaintiffs' motion for an order certifying the class; (2) two motions by the federal defendant to dismiss; and (3) a motion by the state defendants for judgment on the pleadings.[1]

### I. *Motion for class action certification*

█ Plaintiffs have filed a motion pursuant to Rule 23(c)(1), Fed.R.Civ.P., and Local Court Rule 221.13, for an order allowing this action to proceed as a class action. Plaintiffs define the class they propose to represent as consisting of

" . . . all individuals in the State of Georgia who are currently or will be in the future recipients of di-

agnostic and/or rehabilitative services of the Division of Vocational Rehabilitation of the Georgia Department of Human Resources. Members of the class are those in need of 'maintenance' (cash/vendor) payments which cover basic living expenses necessary to derive the full benefit of other vocational rehabilitative services being provided in order to achieve the individual's vocational rehabilitative objectives or to enable an extended evaluation of such individual's rehabilitative potential."

Both the state and federal defendants have filed their objections to class certification on the grounds that plaintiffs have not carried their burden of establishing (1) that the numerosity requirement for class actions has been met; (2) that there are questions of law or fact common to the class (and that, if there are, they predominate over the questions affecting individuals); and (3) that plaintiffs will fairly and adequately protect the interests of the unnamed class members which they seek to represent, insofar as the class purportedly includes the "severely handicapped" who defendants concede are entitled to priority under the Act.

Notwithstanding some doubts raised by defendants' objections, especially with regard to the breadth of the defined class and possible conflicting interests of class members, this court concludes, as is usually its wont in such cases, that justice and judicial economy will be better served by a decision to tentatively certify the class, thus allowing the case to proceed for the time being as a class action until such time as there is suffi-

---

1. Plaintiffs' motion for a temporary restraining order was heard on July 10, 1975; the need for such an order was obviated by agreements reached by the parties in the presence of the court. The nature of these agreements is described in the record in a letter dated July 21, 1975, from plaintiffs' counsel to counsel for the state defendants.

The court has also been informed that the original federal defendant, Secretary of the United States Department of Health, Education and Welfare Caspar Weinberger has resigned and has been succeeded in office by F. David Mathews. The Clerk of the Court is directed to correct the record to reflect the automatic substitution of parties, Fed.R.Civ. P. 25(d).

cient evidence to determine the existence and scope of the class more definitively. Accordingly, this court hereby makes the following tentative findings and conclusions: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, (4) the representative parties will fairly and adequately protect the interests of the class, and (5) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and/or declaratory relief with respect to the class as a whole. Fed.R.Civ.P. 23(a)(1–4), (b)(2). Accordingly, it is hereby determined that the case is to be maintained for the present as a class action pending final determination of that issue later in the proceedings. Plaintiffs are hereby directed to submit within fifteen (15) days a proposal for the manner in which fair notice may be given to the members of the class. Fed.R. Civ.P. 23(d)(2).

II. *The federal defendant's motions to dismiss*

A. *Personal jurisdiction*

■ The federal defendant contends that this court lacks personal jurisdiction over him because of insufficiency of process. He alleges that he was not personally served within the territorial limits of the State of Georgia, and, in the absence of extraterritorial service authorized by federal law, he has not properly been served with process. Fed.R.Civ.P. 4(d)(5) and (f). The federal defendant contends that the provision for extraterritorial service of process on federal officers in 28 U.S.C. § 1391(e) is not applicable here since "each" of the defendants herein is not a federal officer or employee.[2]

While the literal language of § 1391(e) might be taken to mean that *every* defendant named in the action must be a federal officer or employee, this court holds that the better view is that the word "each" in the statute refers to each defendant who is outside the court's jurisdiction and whose presence is sought by extraterritorial service. Defendant Mathews rests his argument to the contrary on *Stinson v. Finch,* 317 F.Supp. 581, 586 (N.D.Ga.1970) (three-judge), in which this court adopted the literal interpretation of § 1391(e). That precedent would be controlling in the case at bar were it not for the fact that it was overruled in *Amchem Products, Inc. v. GAF Corp.,* 64 F.R.D. 550, 552 (N.D.Ga.1974). The published opinion in *Amchem* focused on the issue of executive privilege, but this court preliminarily found § 1391(e) jurisdiction therein over the administrator of the Environmental Protection Agency notwithstanding the presence of a private corporate defendant, citing *Brotherhood of Locomotive Engineers v. Denver & R. G. W. R. R.,* 290 F.Supp. 612, 616 (D. Colo.1968), *aff'd,* 411 F.2d 1115 (10th Cir. 1969). Although the reported opinion did not mention *Stinson,* this court's previous position in that case was fully argued in the briefs and at oral argument, and the court expressly recognized

2. Section 1391(e) of Title 28, United States Code, provides that:

"A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.

"The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought."

at argument that *Stinson's* discussion of § 1391(e) constituted ill-advised dicta[3] in the face of overwhelming authority to the contrary.

To avoid any further misunderstanding of this court's present position on § 1391(e), *Stinson v. Finch, supra,* is hereby overruled to the extent that it denies personal jurisdiction over a nonresident federal officer or employee simply because there are named as defendants parties who are not federal officers or employees. This conclusion is supported by both the legislative history of this remedial statute, *see* 1962 U.S.Code Cong. & Admin.News, p. 2784, and the overwhelming weight of authority, *see, e. g., Liberation News Service v. Eastland,* 426 F.2d 1379 (2d Cir. 1970); *McKenna v. Udall,* 135 U.S.App.D.C. 335, 418 F.2d 1171, 1176 (1969); *Kletschka v. Driver,* 411 F.2d 436 (2d Cir. 1969); *People of Saipan v. U. S. Dept. of Interior,* 356 F.Supp. 645 (D. Haw.1973); *Green v. Laird,* 357 F.Supp. 227 (N.D.Ill.1973); *Macias v. Finch,* 324 F.Supp. 1252 (N.D.Cal.1970) (three-judge), *aff'd sub nom. Macias v. Richardson,* 400 U.S. 913, 91 S.Ct. 180, 27 L.Ed.2d 153 (1970); *Powelton Civic Home Owners Ass'n. v. HUD,* 284 F. Supp. 809 (E.D.Pa.1968).[4]

Accordingly, the federal defendant's motions to dismiss for lack of personal jurisdiction over him are without merit and are hereby denied.

**B.  *Subject-matter jurisdiction***

The complaint herein alleges federal jurisdiction under several statutes: 28 U.S.C. §§ 1343(3) and (4) (the jurisdictional sibling of 42 U.S.C. § 1983); 28 U.S.C. § 1331 (federal question); and 5 U.S.C. § 701 *et seq.* (judicial review of final agency action under the Administrative Procedure Act). The parties have addressed themselves in voluminous briefs to the applicability of these jurisdictional provisions and to important related questions (*e. g.,* whether the APA constitutes an independent grant of jurisdiction, and whether the jurisdictional amount required in federal question cases can be met).

The court concludes that it need not become embroiled in the jurisdictional disputes to which the parties have directed most of their attention inasmuch as the jurisdictional ground alleged in the second amendment to the complaint is sufficient to vest this court with subject-matter jurisdiction. The jurisdictional provision relied upon in that amendment is 28 U.S.C. § 1337:

> "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

Although both the federal and state defendants denied § 1337 jurisdiction in their respective answers to the second

---

3.  *Stinson* need never have discussed the § 1391(e) personal jurisdiction issue, since the court had already found that it lacked subject-matter jurisdiction over the claim against the federal defendant therein.

4.  Judge Body's analysis of § 1391(e) in *Powelton, supra,* bears repeating here:

". . . [T]he requirement that 'each defendant' be a *federal* defendant refers only to defendants who are *beyond* the forum's territorial limits. Thus the joining of a non-federal defendant located within the forum's territorial limits and adequately served under F.R.Civ.P. 4(f) has no effect on the applicability or operation of Section

1391(e). Indeed, any other conclusion would appear entirely illogical. Section 1391(e), as an exception to Rule 4(f), is an authorization of extraterritorial service of process. Its force begins to operate only when Rule 4(f) cannot provide adequate service. It would be absurd to conclude that the operative force of the provision is abrogated by the presence of an additional defendant who can be adequately served within the power of Rule 4(f). The presence of parties who can be and have been served under Rule 4(f) is simply not relevant to the extraterritorial operation of Section 1391(e)." 284 F.Supp. at 833–34.

amended complaint (which amendment was allowed filed September 9, 1975, without opposition), and although the federal defendant noted the new jurisdictional allegation in his second motion to dismiss and promised to address that question if the amendment was allowed, there has been filed no substantive opposition to the alleged applicability of § 1337.

Consonant with the legislative history of § 1337, see 1973 U.S.Cong. & Admin. News, p. 2076 et seq., federal courts have tended to interpret the provision broadly to find jurisdiction thereunder in a wide range of matters considered to affect the regulation of commerce. In areas which might be considered analogous in some respects to the Vocational Rehabilitation Act, jurisdiction has been expressly posited upon § 1337; see, e. g., Finnerty v. Cowen, 508 F.2d 979 (2d Cir. 1974) (challenge to procedures used under Railroad Retirement Act to recoup overpayments); Dew v. McLendon Gardens Associates, 394 F.Supp 1223 (N.D. Ga.1975) (suit to enjoin rent increase for tenants of complex financed under National Housing Act); Silva v. East Providence Housing Authority, 390 F. Supp. 691 (D.R.I.1975) (class action by potential residents of low income housing to compel HUD to release funds allocated to housing project under Housing Act); Bloodworth v. Oxford Village Townhouses, Inc., 377 F.Supp. 709 (N. D.Ga.1974) (action by residents of HUD housing project to compel provision of certain services and required repairs); Tyson v. Norton, 390 F.Supp. 545 (D. Conn.1975), and Irizarry v. Weinberger, 381 F.Supp. 1146 (S.D.N.Y.1974) (three-judge) (actions attacking administration of food stamp program under Food Stamp Act); Marquez v. Hardin, 339 F.Supp 1364 (N.D.Cal.1969) (suit to compel Secretary of Agriculture to ensure that all needy children participating in National School Lunch program be provided with free or reduced-price school lunches).

In light of these cases, the court concludes that the Vocational Rehabilitation Act is sufficiently an act regulating commerce to bring this action within § 1337. It appears that the complaint seeks a remedy either granted by (or properly inferable from) an act regulating commerce, and/or that the suit hinges upon an interpretation of that Act. Garrett v. Time-D.C., Inc., 502 F. 2d 627 (9th Cir. 1974), cert. denied, 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975). It is sufficient that the Act provides the source of the rights and duties claimed in this action. Id. The most recent Fifth Circuit discussion in this area further supports a finding of § 1337 jurisdiction here. In Winningham v. HUD, 512 F.2d 617, 621-23 (5th Cir. 1975), that court found § 1337 jurisdiction in a suit brought under the Housing and Urban Development Act of 1965 in which the plaintiff asserted a right to receive rent supplement payments. The court expressed its belief that " . . . a broad construction of section 1337 is both appropriate and desirable," and noted that the commerce clause need not be the exclusive source of federal power; it suffices that it be a significant one. 512 F.2d at 621.

■■ The Vocational Rehabilitation Act, by its very definition, is an act aimed at encouraging employment by helping disabled individuals to engage in remunerative occupations. A reading of the historical background and congressional purposes underlying the Act, see 1973 U.S.Code Cong. & Admin.News, p. 2076 et seq., compels the conclusion that this is precisely the type of statute contemplated as "finding its source in the commerce clause." This court is satisfied that the rights claimed by plaintiffs herein, if indeed such rights exist, " . . . comes into being from the Federal Act and the effectual enforcement of that right depends on the validity, construction or effect of that statute." Caulfield v. Dept. of Agriculture, 293 F.2d 217, 222 (5th Cir. 1961), cert.

*denied,* 369 U.S. 858, 82 S.Ct. 946, 8 L. Ed.2d 16.

For the foregoing reasons, this court concludes that it has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1337,[5] and defendants' motions to dismiss for lack thereof are, accordingly, denied.

### III. *State defendants' motion for judgment on the pleadings and federal defendant's 12(b)(6) motion*

■ All of the defendants contend that they are entitled to judgment as a matter of law, and that this is clear from the face of the pleadings. The federal defendant argues that the complaint fails to state a claim upon which relief may be granted as to him because (1) neither the Act nor the regulations thereunder impose the duty upon him which plaintiffs assert, and (2) he has fulfilled the limited duties which are imposed upon him. He contends that the primary responsibility for implementation of rehabilitative services is the state's; that it is appropriate for the state to make some determination of "need" insofar as it is well-recognized that there are limited resources available for implementation of the Act; and that Georgia's test for determining "need" is not unreasonable.

The state echoes the same argument that it is vested with the greatest discretion in deciding who gets what services after they have been found eligible for rehabilitative services, 29 U.S.C. § 723, every service enumerated therein not being appropriate for every recipient. The state defendants vigorously contend that, unlike Social Security, there is no statutory (or constitutional) right to maintenance, and that the Act recognizes this by allowing the state to enact plans for determining who shall have priority in receiving services.[6] Without any right of entitlement, defendants argue, plaintiffs have no cause of action.

Just as vigorously, plaintiffs assert that they do have a statutory right to receive maintenance once they have been declared eligible for vocational rehabilitation services. Reasoning from the legislative history of the Act, they contend that maintenance is a *mandatory* service. *See* Plaintiffs' Reply Brief of August 5, 1975, at pp. 2–3. Given the present state of the record, this court cannot say with the requisite certainty that plaintiffs have failed to state a colorable claim against the federal defendant, or that a decision on the merits can be reached at this time. It is by now black-letter law that the standards for short-circuiting a case before reaching the merits at trial are extremely exacting. Given his substantial, if not substantive role in overseeing the administration of the Act, 29 U.S.C. §§ 780 *et seq.,* the federal defendant here has failed to prove beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief as against him. *Conley v. Gibson,* 355 U.S. 41, 46–47,

---

5. Unlike 28 U.S.C. § 1331, there is no requirement that a minimum amount be in controversy where jurisdiction is founded upon section 1337. *Caulfield v. Dept. of Agriculture, supra,* at 222, n. 10.

The court also rejects defendants' contention that plaintiffs must exhaust administrative remedies before suing in this court. There are apparently no federal administrative remedies to exhaust, and any available state remedies go only to individual determinations of eligibility for maintenance. This suit is brought to attack the broad fabric of the federal and state administration of the Act with regard to provision for maintenance payments. The case has been tentatively certified as a class action, and the court is unpersuaded that requiring exhaustion of administrative remedies would bring plaintiffs any closer to the relief they seek in this action.

6. Section 721(a)(5)(A) of Title 29 provides that the order of selection for the provision of vocational rehabilitation services " . . . shall be determined on the basis of serving first those individuals with the most severe handicaps . . . ."

78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cook & Nicholl, Inc. v. Plimsoll Club,* 451 F.2d 505 (5th Cir. 1971). The federal defendant's motion to dismiss for failure to state a claim is therefore denied. Similarly, the state defendants have not convinced this court that there are no genuine issues of fact to be tried in this case. Judging from some of plaintiffs' answers to interrogatories, the court can expect the submission of substantial expert testimony. As all doubt as to the existence of genuine issues of material fact must be resolved against the moving party, *see Gross v. Southern Ry.,* 414 F.2d 292, 297 (1969), this court shall deny the state defendants' motion for judgment on the pleadings.

The appropriateness of these rulings is even more apparent in light of the fact that plaintiffs have filed a motion for preliminary and permanent injunctive relief which will be heard today, December 2, 1975. Given this court's decided preference for the resolution of lawsuits on the merits of the relevant evidence, a decision to terminate the lawsuit on the present state of the record is not warranted at this time. After the scheduled hearing and a review of the evidence and argument, this court might well decide that the arguments set forth in the defendants' respective 12(b)(6) motion and motion for judgment on the pleadings control the case. That possibility, however, does not incline the court to deny plaintiffs the opportunity to prove their case upon all the evidence and relevant argument thereon.

In sum, then, plaintiffs' motion for certification of the class is tentatively granted, as described more fully *supra*; the federal defendant's motions to dismiss are denied; the state defendants' motion for judgment on the pleadings is denied; a ruling on plaintiffs' motion for preliminary and permanent injunctive relief is deferred until after the evidentiary hearing scheduled for today.